# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T.W., a minor, by and through his father, THOMAS WALTMAN, and his mother, KAREN WOJTOWICZ, THOMAS WALTMAN, individually, and KAREN WOJTOWICZ, individually, | No. 4:20-CV-01688 (Judge Brann) |
| Plaintiffs, | |
| v. | |
| SOUTHERN COLUMBIA AREA SCHOOL DISTRICT, | |
| Defendant. | |

## MEMORANDUM OPINION

### SEPTEMBER 25, 2020

Pending before this Court is a motion for a preliminary injunction and temporary restraining order filed by Plaintiff, T.W. on September 17, 2020. Plaintiff commenced this action on September 16, 2020 pursuant to 42 U.S.C. § 1983 after he was suspended from participating in all school athletic programs for the 2020-21 school year for violating the Southern Columbia School District's Code of Conduct.  T.W. seeks injunctive relief to prevent Defendant, the Southern Columbia School District, from enforcing the applicable section of its Code of Conduct against him, thereby lifting his suspension and allowing him to play sports this year.  T.W. asserts that the policy is invalid on its face and raises equal

protection, substantive due process, procedural due process, and state law challenges against the District.

Following an expedited briefing schedule, this matter is now ripe for the Court's consideration.  For the following reasons, Plaintiff's motion for a temporary restraining order will be denied.

## I.    BACKGROUND

### A.    The District Code of Conduct and Student Handbook

This case arises from the Southern Columbia School District's Code of Conduct.  The District has formalized its Code of Conduct in its High School Student Handbook.[1]  Acknowledging that participation in extracurriculars is a "privilege and not a right," Section VII of the Handbook explains that those who participate in extracurriculars will be held to a higher standard than those who do not.[2]  The purpose of holding these students to a higher standard is to "instill in students a respect for good citizenship in the form of positive peer pressure."[3]  Accordingly, Section VII states that the Code of Conduct will be enforced against such students "regardless of whether the offense occurs on or off school

---

[1]   Doc. 11-1.
[2]   *Id.* at 39.
[3]   *Id.* at 41.  The general purpose of the Handbook is to "give school district students and their parents/guardians an understanding of the general rules and guidelines for attending and receiving an education at Southern Columbia Area High School."  *Id.* at 1.

property."[4]  Supplementing the rules listed in the general Code of Conduct, Section VII sets forth additional rules applicable only to those involved in extracurriculars.[5]

One such rule (and the rule at issue in this case) prohibits students from "attending any event in which underage drinking, smoking, or drug use is occurring."[6]  Actual consumption of alcohol or drugs is not required to establish a violation.[7]  On its face, this rule applies to all students subject to Section VII, and thus to all students who participate in extracurriculars.[8]  On the next page, the Handbook includes a section titled "Tobacco/Nicotine Products/Alcohol/Controlled Substances/Paraphernalia."[9]  This section prohibits students from selling, giving, delivering, using, possessing, or being under the influence of alcohol or drugs.[10]

Immediately below this section, the Handbook specifies punishments for violations of this rule.[11]  These punishments are as follows.  A first violation results in the student's suspension from 25% of the games of the current or upcoming

---

[4]   *Id.* at 39.
[5]   *Id.* at 39-45.  The District also has an Athletic Handbook specifically for student athletes.  Doc. 11 at ¶ 31.  Because the challenged policy is listed in both handbooks in identical form, the Court will refer only to the High School Student Handbook.  *Id.*
[6]   *Id.* at 40.  Students will not be disciplined for attending such an event if, after determining in a reasonable amount of time that a violation has occurred, they immediately leave the premises.  *Id.*
[7]   *Id.* at 41.
[8]   *Id.* at 40.  The Handbook explicitly provides that "[a]ny student involved in an extra-curricular program who is found to be in violation of any of the infractions mentioned [within Section VII] will face disciplinary action."  *Id.*
[9]   *Id.* at 41.
[10]  *Id.*
[11]  *Id.*

season in which the student has intended to participate.[12]  A second violation

results in a suspension from 50% of such games.[13]  And a third violation results in

a suspension from all interscholastic athletics for one full calendar year.[14]

The Handbook then repeats the rule that no student shall attend any off-

campus parties or gatherings where alcohol or drug use occurs.[15]  The Handbook

does not include any other specific punishments within Section VII.  However, the

Handbook does provide that coaches or advisors have the authority to impose

"reasonable sanctions, which may include extra workouts, suspension from

practice or competition, or removal from the activity for students who breach

team/group conduct expectations but do not engage in prohibited conduct."[16]  The

Handbook further states that "[a] student's failure to maintain good conduct,

regardless of whether the behavior is school-related, will be grounds for

disciplinary action ranging from counseling to immediate suspension or removal

from the team or group depending on the severity of the misconduct."[17]

Section VII also lays out the procedures for establishing a violation and

imposing sanctions.[18]  When the school learns that a violation has occurred, the

"Principal or the Principal's designee shall give the student oral notice of the

---

[12]  *Id.*
[13]  *Id.*
[14]  *Id.*
[15]  *Id.*
[16]  *Id.* at 43.
[17]  *Id.*
[18]  *Id.*

allegations and an opportunity to explain or defend the conduct."[19]  The Principal

or designee will then determine if the violation has occurred and will impose

sanctions as appropriate.[20]  The Handbook maintains that all students will be

provided due process, which it defines as notice of the alleged violation and an

opportunity for the student to tell his or her story.[21]

### B.    T.W.'s Violations of the District Code of Conduct

T.W., a seventeen-year-old student athlete and senior at the Southern

Columbia Area High School, has been suspended three times for violating the

District's Code of Conduct.[22]  First, in November 2019, T.W. was suspended for

twenty-five percent of the 2019 football season for an incident involving alcohol.[23]

Second, in February 2020, T.W. was suspended for attending an off-campus party

where underage drinking or drug use was taking place.[24]  While he did not

consume alcohol or drugs at the party, he was banned from participating in the

remainder of the 2020 wrestling season, as well as the first four games of the 2020

football season.[25]  Third, on September 5, 2020, T.W. was again suspended for

attending an off-campus party where underage drinking or drug use was taking

---

[19]  *Id.*

[20]  *Id.*

[21]  *Id.*

[22]  Doc. 11 at ¶¶ 1, 14, 18, 23.

[23]  *Id.* at ¶ 14.  T.W. was also required to attend drug and alcohol counseling and was placed on probation as a result of this incident.  *Id.* at ¶ 17.

[24]  *Id.* at ¶ 18.

[25]  *Id.* at ¶ 21.  T.W.'s suspension during the 2020 football season was reduced after discussions between T.W., his parents, and the District.  *Id.* at ¶ 22.

place.[26]  He did not consume alcohol or drugs at the party.[27]  However, pursuant to

the Handbook's policy, T.W. was then suspended from all athletics for the entire

participating in all athletics for the entire 2020-21 school year.[28]

This suit followed.  T.W. presently seeks injunctive relief enjoining his

suspension and allowing him to participate in athletics for the 2020-21 school year

pending a preliminary injunction hearing on October 15, 2020.

## II.    STANDARD OF REVIEW

Injunctive relief is an "extraordinary remedy, which should be granted only

in limited circumstances."[29]  A party seeking a temporary restraining order must

establish four factors: "(1) a likelihood of success on the merits, (2) the probability

of irreparable harm if the relief is not granted, (3) that granting injunctive relief

will not result in even greater harm to the other party, and (4) that granting relief

will be in the public interest."[30]  Courts will use a balancing test to determine

whether injunctive relief is warranted.[31]  However, the movant will bear the

ultimate burden of establishing all four elements.[32]

---

[26]  *Id.* at ¶ 23.

[27]  *Id.* at ¶¶ 24-25.

[28]  *Id.* at ¶ 26.  The complaint does not go into detail regarding the procedures followed prior to T.W.'s final suspension.  It is thus unclear whether T.W. attended any hearings or spoke with the District before his suspension became effective.

[29]  *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citing *Morton v. Beyer*, 822 F.2d 364, 376 (3d Cir. 1987)).

[30]  *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) (citing *Frank's GMC Truck Center*, 847 F.2d at 102).  "The standards for a temporary restraining order are the same as those for a preliminary injunction."  *Id.* (internal citations omitted).

[31]  *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975).

[32]  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000).

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

The first factor to consider is whether the movant can demonstrate that their claims have a likelihood of success on the merits. To satisfy this showing, a movant need only establish a *prima facie* case demonstrating a "reasonable probability" of success;[33] they are not required to prove that success is "more likely than not."[34]   Nevertheless, as with the other three factors, the movant bears the burden of making this showing.[35]

### 1.   Equal Protection Claim

T.W. fails to establish that his equal protection claim has a likelihood of success on the merits.  Equal protection claims, when not involving a suspect class or fundamental right, will be governed by the "rational basis test."[36]  Under this test, government action will be upheld so long as it "rationally furthers some legitimate, articulated state purpose."[37]  The rational basis test is a heavy burden to overcome, as "it has long been settled that the Equal Protection Clause is offended only by laws that are invidiously discriminatory—only by classifications that are wholly arbitrary or capricious."[38]  Because the District's policy does not implicate

---

[33]   *Issa v. School Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (internal quotations omitted).

[34]   *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n. 3 (3d Cir. 2017) (internal quotations omitted).

[35]   *Adams*, 204 F.3d at 486.

[36]   *Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121, 124 (3d Cir. 1978).

[37]   *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

[38]   *Id.* (J., Stewart, concurring).

a suspect class or fundamental right,[39] T.W.'s claim will be governed by the rational basis test.

T.W. challenges the Handbook's prohibition against attending off-campus parties as facially unconstitutional because the listed punishments in Section VII only apply to athletes. He cites the list of punishments provided for in the Handbook that refer only to suspensions from "games" and "seasons." While acknowledging that the policy on its face applies to all students, T.W. argues that, per the Handbook's list of punishments, the District would only be able to meaningfully enforce the rule against athletes.

This argument is unavailing. As T.W. concedes, the Handbook's policy applies not just to athletes but to *all students who participate in extracurriculars*. More importantly, however, the Handbook explicitly states that any student who participates in extracurriculars and violates this policy "*will face disciplinary action*." The Handbook is not required to list in detail every punishment that every student may conceivably face if they violate the policy. And it is clear from the language of Section VII that any student who participates in extracurriculars is subject to punishment for violating any policy contained within the Handbook. That Section VII explicitly states that a "*student's* failure to maintain good conduct" may result in "immediate suspension or removal from the team *or group*"

---

[39]   Participating in "extra-curricular activities is not a fundamental right under the Constitution." *Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 96 (3d Cir. 1989).

sufficiently shows that the listed punishments are not the exclusive means of enforcing this rule.[40]

Even taking T.W.'s argument at face value that the Handbook distinguishes between athletes and non-athletes by providing for specific punishments only available against athletes, T.W. cannot demonstrate that such a distinction is irrational.  The stated purpose of the Handbook is to give students and parents "an understanding of the general rules and guidelines" while attending school.[41]  And the District's stated reason for adopting these specific sanctions is to "combat student drug and alcohol use while also mak[ing] discipline among various student activities consistent."[42]  These punishments, though clearly easier to apply to athletes than to, say, someone in the drama club, are rationally related to the District's interests in giving student's notice of the possible consequences of their actions and making punishments, to the extent possible, more consistent.[43]

---

[40]  Doc. 11-1 at 43.  While not properly in evidence, the District has also alleged that the policy has been enforced against non-athlete students, including one cheerleader currently serving a suspension.  Doc. 12 at 11.  The District also claims that non-athlete students have been punished for violations by being "barred from drama club practices or . . . prevented from attending the prom."  *Id.*

[41]  Doc. 11-1 at 1.

[42]  Doc. 12 at 11.

[43]  It is also relevant to note that the District has found it necessary to create an entire student handbook specifically for athletes.  Doc. 11 at ¶ 31.  Importantly, T.W. does not challenge the fact that athletes in the District are in many ways subject to greater regulation and supervision than those who participate in other extracurriculars.  *E.g.*, Doc. 11-1 at 48-50 (detailing specific rules that are applicable only to athletes).

Because T.W. can neither prove that the District's policy discriminates against athletes nor that any alleged discrimination would be irrational, he cannot establish that his equal protection claim has a likelihood of success.

### 2.      Substantive Due Process

T.W.'s parents fail to establish that their substantive due process claim has a likelihood of success on the merits.  To assert a substantive due process claim under § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States."[44]  Accordingly, the first step in evaluating such a claim is to "'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[45]  Because "the core of the concept [of due process is] protection against arbitrary action," "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."[46]  Thus, to succeed on a substantive due process claim, a plaintiff "must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."[47]

---

[44]   *Chainey v. Street*, 523 F.2d 200, 219 (3d Cir. 2008) (internal citations omitted).

[45]   *Id.* (citing *Nicini v. Morra*, 212 F.3d 279, 806 (3d Cir. 2000) (en banc)).

[46]   *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[47]   *Id.* (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400-02 (3d Cir. 2003)).

T.W.'s parents assert that the substantive right at issue is their right as parents to direct and control their children's upbringing and education.[48]  The Supreme Court first articulated this right in *Meyer v. Nebraska*[49] and *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*.[50]  In *Meyer*, the Court struck down a law forbidding the teaching of certain language to students at primary schools.[51]  And in *Pierce*, the Court held that states may not force parents to enroll their children in public school.[52]  The Court has also considered this right in the context of the child-parent relationship; however, it has mostly given attention to laws that directly infringe upon parental or custodial rights.[53]

The Supreme Court has yet to "define the precise boundaries of a parent's right to control a child's upbringing and education."[54]  "It is clear, however, that the right is neither absolute nor unqualified."[55]  Where the government has only indirectly infringed upon a parent's right, the infringement will be "subject to minimum scrutiny, requiring only that the action rationally advance a legitimate

---

[48]   *Troxel v. Granville*, 530 U.S. 57, 65 (2000).
[49]   262 U.S. 390 (1923).
[50]   268 U.S. 510 (1925).
[51]   262 U.S. at 403.
[52]   268 U.S. at 534-35.
[53]   *E.g.*, *Troxel*, 530 U.S. at 71-72 (striking down a state law permitting courts to disregard decisions made by parents regarding visitation with third parties); *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982) (requiring states to support allegations by at least clear and convincing evidence to permanently sever parental rights); *Stanley v. Illinois*, 405 U.S. 645, 657 (1972) (holding that a father was entitled to a hearing on his fitness as a parent before losing parental rights).
[54]   *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005).
[55]   *Id.* (internal citations omitted).

government interest."[56]  Because the District's policy does not directly impose upon T.W.'s parents,[57] this Court shall consider any effect it has on their interests to be incidental.  Consequently, this Court will review the District's policy under the rational basis test.

T.W.'s parents have not shown that the District has infringed upon their right to direct and control T.W.'s upbringing and education.  They argue that the District's rule punishing students for attending parties where underage drinking or drug use is occurring "prohibits the parent from making decisions as to where and when it is acceptable for their children to socialize and under what circumstances."[58]  But T.W.'s parents do not cite any cases or attempt to explain why "making decisions as to where and when" their children socialize is or should be considered a constitutional right.  There are no cases previously, to this Court's knowledge, recognizing such a right.  And this Court declines to expand substantive due process merely to accommodate T.W.'s parents' claim.

Moreover, even if T.W.'s parents could establish such a right, they have not satisfied their burden of showing that the District's policy is irrational or shocks the conscience.  The District has a valid interest in discouraging and preventing

---

[56] *Angstadt v. Midd-West School Dist.*, 377 F.3d 338, 344 (3d Cir. 2004) (citing *Philadelphia Police and Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 168 (3d Cir. 1989).

[57] Unlike the cases cited above, the policy punishes only T.W., and not his parents, for his behavior.

[58] Doc. 4 at 16.

alcohol and drug use amongst its students.[59]  Prohibiting students from attending

parties where they are exposed to alcohol or drugs is rationally related to this

interest.  Because T.W.'s parents cannot show that their right to direct and control

T.W.'s upbringing and education have been violated, they have failed to establish a

likelihood of success on the merits of their substantive due process claim.

### 3.   Procedural Due Process

T.W. fails to establish that his procedural due process claim has a likelihood

of success on the merits.  To succeed on a due process claim, plaintiffs must prove:

"(1) a deprivation of an individual interest encompassed by the Fourteenth

Amendment's protection of life, liberty, or property, and (2) that the procedures

available did not provide due process of law.[60]

Students have a recognized property-interest in education.[61]  However, as

this Court has stated previously in *Dallam v. Cumberland Valley School District*,

students have an interest in the "entire process" of education; they do not have

numerous individual property rights in the "myriad activities which combine to

form" their entire education.[62]  Accordingly, students do not have a recognized,

---

[59]  *See Morse v. Frederick*, 551 U.S. 393, 407 (2007) ("[D]eterring drug use by schoolchildren is an 'important—indeed, perhaps compelling' interest.") (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 655-56 (1995)); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 656 (1989) (acknowledging the government's strong interest in detecting drug use among certain employees).

[60]  *Culinary Serv. Of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 Fed. Appx. 135, 140-41 (3d Cir. 2010) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

[61]  *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972).

[62]  391 F. Supp. 358, 361 (M.D. Pa. 1975).

freestanding property-interest in participating in athletic and extracurricular activities.[63]

Nevertheless, a school may create such a property interest where it explicitly guarantees that it will provide students with due process.[64]  In *Davis v. Central Dauphin School District School Board*, this Court determined that the school in question created a property interest in playing basketball by informing students that they would receive due process before being subject to removal from an extracurricular activity.[65]  The Court interpreted this as requiring the school to provide the student with "oral or written notice of the charges against him and if he denies them, an explanation of the evidence that the school authorities have and an opportunity to present his side of the story."[66]  In setting forth these procedures, the Court looked to *Goss v. Lopez* for guidance.[67]  Because *Goss* prescribed these exact requirements for students facing a ten-day suspension, this Court found it appropriate to adopt the same rules where a student faces possible removal from a sports team.[68]

---

[63]   *Id.* at 362; *see also Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 344 (3d Cir. 2004); *Dominic J. v. Wyoming Valley West High School*, 362 F. Supp. 2d 560, 671 (M.D. Pa. 2005).

[64]   *Davis v. Central Dauphin School Dist. School Bd.*, 466 F. Supp. 1259, 1263-64 (M.D. Pa. 1979).

[65]   *Id.*

[66]   *Id.*  (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

[67]   *Id.*

[68]   *Id.*

Turning to the present case, the Court finds that the District has established a legal property-interest in participating in extracurriculars.  The Handbook's statement that all students subject to Section VII will be "provided due process" throughout the disciplinary process is enough to establish a legal interest in these activities.  That said, the District's suspension will only violate the Due Process Clause if the procedures offered do not satisfy the requirements set forth in *Davis*.[69]  The District will thus have provided T.W. with sufficient due process so long as it gave T.W. oral or written notice of the charges against him, and *if* he denies them, an opportunity to present his side of the story.

T.W. has not shown that did not receive due process before being suspended. All T.W. alleges is that he was "not afforded a pre-deprivation hearing or an opportunity to present his side of the story prior to the deprivation."[70]  But under *Davis*, T.W. does not have an unqualified right to a hearing, and he only will have the opportunity to present his side of the story if he chooses to rebut the factual basis for his charges.[71]  T.W. does not contest that he received notice of his charges.  And he does not allege that he ever tried to deny the factual basis for his suspension, which would in turn have triggered his right to present his side of the

---

[69]   The Court does not take any opinion as to whether due process requires *less* than that set forth in *Davis*; it simply recognizes that satisfying the *Davis* requirements will be sufficient to defeat T.W.'s due process claim.

[70]   Doc. 11 at ¶ 76.

[71]   *Davis*, 466 F. Supp. at 1263-64.

story.[72]  Consequently, T.W. has not shown that his procedural due process claim has a likelihood of success on the merits.

### 4.  State Law

T.W. fails to establish that his state law claim has a likelihood of success on the merits.  At issue here is whether the District's authority under Section 511 of the Public School Code of 1949[73] permits it to suspend a student from participating in extracurricular activities when that student attends an off-campus party where underage drinking or drug use is present.[74]

When evaluating the validity of a local school-board or district action, courts in Pennsylvania have been well-warned to exercise caution and restraint.[75]  As the Supreme Court of Pennsylvania has advised: "courts should not function as super school boards."[76]  Accordingly, a school is subject to injunctive relief only where it abuses and "transcends the limits of its legal discretion."[77]  "The burden of showing such an abuse is a heavy one and rests with the party seeking the injunction."[78]

---

[72]  In fact, the crux of T.W.'s entire argument has been to concede the factual basis for his suspension while challenging its legal validity.

[73]  24 P.S. § 5-511(a).

[74]  Both parties agree that such a suspension is beyond the power of the District under Section 510 of the Public School Code.  Doc. 12 at 14-15.

[75]  *Zebra v. Sch. Dist. of City of Pittsburgh*, 296 A.2d 748, 750-51 (Pa. 1972).

[76]  *Id.*

[77]  *Id.*  (internal citations omitted).

[78]  *Id.*  (internal citations omitted).

With these background principles in mind, the Court now turns to the statute itself.  The text of Section 511 reads as follows:

> The board of school directors in every school district shall prescribe, adopt, and enforce such *reasonable rules and regulations* as it may deem proper, regarding (1) *the management, supervision, control, or prohibition of exercises, athletics, or games of any kind* . . . and (2) the organization, management, supervision, control financing, or prohibition of organizations, clubs, societies and groups of the members of any class or school, and may *provide for the suspension, dismissal, or other reasonable penalty* in the case of any . . . pupil who violates any of such rules or regulations.[79]

Section 511 is a "broad legislative mandate and deserves a broad interpretation."[80]  However, the analysis required to review local authority under Section 511 is necessarily fact-intensive, and any challenge will be considered on a case-by-case basis."[81]

The two cases offered by the parties are useful in determining the scope of the District's authority under Section 511.  In *Billman v. Big Spring School District*, the Court of Common Pleas of Cumberland County, Pennsylvania upheld the suspension of two students who consumed a bottle of wine before attending a school dance as a valid exercise of school authority.[82]  Despite the students having consumed the wine off-campus, the court found their intoxication at a school function to be sufficient grounds for the school district to assert its authority under

---

[79]   24 P.S. § 5-511(a) (emphasis added).
[80]   *King v. Hempfield School Dist.*, 8 Pa. D. & C.4th 48, 52 (1990).
[81]   *Id.*  (citing *Delisio v. Elwood City Area Sch. Dist.*, 70 Pa. D. & C.2d 524 (1975)).
[82]   27 Pa. D. & C.3d 488, 497 (1983).

Section 511.[83]  The court found it unnecessary to address the scope of the school district's authority to punish students who engaged in misconduct wholly off-campus.[84]

In *King v. Hempfield School District*, the Court of Common Pleas of Lancaster County, Pennsylvania addressed whether a school district has authority under Section 511 to suspend a student athlete who drinks alcohol off-campus but who does not subsequently attend a school-related event.[85]  The court answered in the affirmative, holding that Section 511 authorized such a suspension.[86]  It reasoned that, by agreeing to comply with the school district's policy against off-campus alcohol and substance use, and by being a "participant in extracurricular activities," the student had thereby placed himself "under school supervision."[87]  Relying on this interpretation, the court found it not unreasonable for the school district to apply its policy to the student, even where all misconduct occurred off-campus.[88]

---

[83]  *Id.*

[84]  *Id.*  Contrary to T.W.'s assertions, *Billman* does not stand for the proposition that a school district's "rules and regulations" must be "related to the school program."  Doc. 13 at 13 n. 4. The "rule" that T.W. claims exists appears to come from the language of Section 511 rather than from *Billman*.  24 P.S. § 5-511(a) ("The board of school directors . . . shall prescribe, adopt, and enforce such reasonable *rules and regulations* . . . regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and *other activities related to the school program*.") (emphasis added).

[85]  *King*, 8 Pa. D. & C. 4th at 52.

[86]  *Id.*

[87]  *Id.*

[88]  *Id.*

*King* is directly applicable to the present case.  Section VII of the Handbook explicitly provides that students who participate in extracurriculars are held to a higher standard than other students.  T.W., by being a student athlete, has thus agreed to comply with the rules and regulations set forth in Section VII.  The appropriate question here is not whether the party T.W. attended was school-related, but whether T.W. had subjected himself to greater school supervision by participating in extracurricular activities.  Because T.W. had done so, this Court finds the District's policy to be a reasonable exercise of discretion.

As *Billman* recognized, "it is often necessary for school officials to regulate a student's activities outside the actual classroom."[89]  Because the District has a valid interest in preventing and discouraging alcohol-use amongst students[90] and because prohibiting students from attending parties where underage drinking is present is reasonably related to this goal, the Court cannot hold that the District's policy is an abuse of discretion.  Consequently, T.W. has failed to show that his state claim has a likelihood of success on the merits.

### B.    Irreparable Harm

The second requirement for a temporary restraining order is "a showing that the plaintiff will suffer irreparable harm if an injunction is not issued."[91]  In *D.M. by Bao Xiong v. Minnesota State High School League*, the United States Court of

---

[89]   *Billman*, 27 Pa. D. & C. 3d at 496.
[90]   *Id.*; *King*, 8 Pa. D. & C. 4th at 52.
[91]   *H. v. Easton Area School Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa. 2011).

Appeals for the Eighth Circuit found that two students who were denied from participating on their school's dance team had established irreparable harm.[92]  The court reasoned that the students could not "get that season back," and that "deprivations of temporally isolated opportunities[] are exactly what preliminary injunctions are intended to relieve."[93]

Here, T.W. has sufficiently demonstrated irreparable harm.  Being unable to participate in athletics for a year is a "temporally isolated opportunity" and is, the Court agrees, precisely the type of injury that preliminary injunctive relief is intended to prevent.  While the District is correct to note that *D.M by Bao Xiong* dealt with a gender discrimination claim, the Eighth Circuit's temporal analysis is still persuasive in interpreting the possible harm caused by being deprived of the opportunity to participate in athletics for a year.  T.W. has thus satisfied his showing of irreparable harm.

### C.    Balance of Harm

The third factor, the balance of harms, requires determining "whether granting preliminary relief will result in even greater harm to the nonmoving party."[94]  "To determine which way the balance of hardship tips, a court must identify the harm to be caused by the preliminary injunction against the possibility

---

[92]   917 F.3d 994, 1003 (8th Cir. 2019).
[93]   *Id.*
[94]   *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

- 20 -

of the harm caused by not issuing it."[95]  A court may consider a party's likelihood of success on the merits when determining in which direction the balance of harm tilts.[96]  The Court is satisfied that the risk of harm from enjoining the District's ability to consistently enforce its disciplinary rules sufficiently outweighs the risk that T.W. faces as a result of his suspension.  T.W. has not established a likelihood of success on the merits, and the balance of harms consequently weighs in favor of the District.

### D.   Public Interest

The fourth factor involves determining whether the public interest weighs in favor of or against injunctive relief.  T.W. argues that the public interest weighs in favor of relief because, in the absence of legitimate countervailing concerns, "the public's interest favors the protection of constitutional rights."[97]  Here, however, neither T.W. nor his parents have established a likelihood of success on their constitutional claims.  Moreover, the public has a strong interest in deterring underage drinking amongst students that would be harmed by enjoining T.W.'s suspension.[98]  Accordingly, the public interest weighs against injunctive relief.

---

[95] *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007) (citing *Los Angeles Memorial Coliseum Commission v. NFL*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

[96] *Easton Area School Dist.*, 827 F. Supp. 2d at 409.

[97] *B.H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa. 2011) (quoting *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997)).

[98] *See Morse*, 551 U.S. at 407; *Acton*, 515 U.S. at 655-56; *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. at 656.

## IV.    CONCLUSION

Taken together, T.W. and his parents have not met their burden for proving that injunctive relief is warranted under the circumstances. His motion for a temporary restraining order is thus denied.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge